**FILED**

OCT - 2 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# In the United States Court of Federal Claims

No. 12-202C
Filed: July 23, 2012
**TO BE PUBLISHED**

**FILED**

JUL 2 3 2012

**U.S. COURT OF
FEDERAL CLAIMS**

```
*************************************
                                    *
                                    *
RICHARD M. GABLE,                   *
                                    *
        Plaintiff, pro se,          *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
        Defendant.                  *
                                    *
                                    *
*************************************
```

Americans with Disabilities Act of 1990,
  Pub. L. No. 101-336, 104 Stat. 327;
Federal Tort Claims Act, Pub. L. No. 79-
  601, §§ 401-24, 60 Stat. 812 (1946);
Motion to Dismiss, RCFC 12(b)(1);
*Pro Se*;
Transfer, 28 U.S.C. § 1631 (2006);
Tucker Act Jurisdiction,
  28 U.S.C. § 1491 (2006);
U.S. CONST. amend. VI.

Case: 1:12-cv-01634
Assigned To : Collyer, Rosemary M.
Assign. Date : 10/2/2012
Description: Pro Se Gen. Civil

**Richard Maurice Gable**, Mechanicsville, Maryland, Plaintiff, *pro se*.

**Seth W. Greene**, United States Department of Justice, Civil Division, Washington, D.C.,
Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge.*

### I.   FACTUAL BACKGROUND.[1]

In January 2006, Mr. Richard M. Gable ("Plaintiff"), a veteran of the Vietnam War,
entered the Department of Veterans Affairs ("DVA") Medical Center in Washington, D.C. (the
"VA Medical Center") for replacement of his left knee.  Compl at 3.  After his initial knee
surgery, Plaintiff "came down with a very serious staph infection, which placed him in critical
care[.]" Compl. at 3.

On August 23, 2006, a DVA doctor amputated Plaintiff's left leg, allegedly without
consent.  Compl. at 3.  Because of the alleged negligence, two additional surgeries were required.
Compl. at 3.  The VA Medical Center also allegedly was negligent in providing Plaintiff with
medical care and necessary medication.  Compl. at 4.  Moreover, Plaintiff allegedly was "tied to
a bed, drugged, and not on the proper mental health medication[;]" denied "a shower or bath for

---

[1] The facts herein have been derived from the March 29, 2012 Complaint ("Compl.") and
attached exhibit ("PX 1").

**RECEIVED**

OCT - 1 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

ten months and 19 days[;]" and "placed in a recovery room without wheelchair access." Compl. at 4.

Plaintiff remained hospitalized until October 2006, when he was discharged from the VA Medical Center. PX 1.

## II.   PROCEDURAL HISTORY.

On September 16, 2008, Plaintiff filed an administrative claim with the DVA, pursuant to the Federal Tort Claims Act, Pub. L. No. 79-601, §§ 401-24, 60 Stat. 812 (1946) ("FTCA"). *See* PX 1. On September 30, 2011, the DVA sent Plaintiff a Response to Request for Reconsideration (the "September 30, 2011 Decision"), denying his claims for a lack of evidence and as untimely, under 28 U.S.C. § 2401(b) (2006) (requiring FTCA claims to be filed with a federal agency within two years "after such claim accrues").[2] PX 1.

The September 30, 2011 Decision advised Plaintiff that: "a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration" and "such a suit must be initiated . . . within 6 months after the date of mailing of this notice of final denial." PX 1 (citing 28 U.S.C. § 2401(b)).

On March 29, 2012, Plaintiff filed a Complaint in the United States Court of Federal Claims that alleges claims of negligent infliction of severe emotional distress, medical malpractice, gross negligence, and unauthorized medical treatment. Compl. at 4. The Complaint also alleges a claim under the Sixth Amendment of the United States Constitution and a violation of the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 ("ADA"). Compl. at 4. To redress these alleged injuries, the Complaint requests that the court award Plaintiff monetary damages in the amount of $5,000,000.00. Compl. at 6.

On May 29, 2012, the Government filed a Motion To Dismiss Pursuant To Rule 12(b)(1). Plaintiff's Response was due June 29, 2012. *See* RCFC 7.2 (requiring a response to a RCFC 12(b) motion to be filed "within 28 days after service of the motion"). Plaintiff, however, did not file a Response.

## III.   JURISDICTION.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers

---

[2] The March 29, 2012 Complaint attached the DVA's September 30, 2011 Response to Request for Reconsideration regarding Plaintiff's FTCA claim, but not Plaintiff's initial complaint to the DVA or the DVA's initial Decision denying Plaintiff's September 16, 2008 claim. *See* PX 1 (the DVA's Sept. 30, 2011 Response to Request for Reconsideration).

jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff.  *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The jurisdictional defects in the March 29, 2012 Complaint are discussed below.

IV.    **DISCUSSION.**

A.    **Standard For Decision On Motion To Dismiss Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]").  When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

B.    *Pro Se* **Litigants.**

The pleadings of a *pro se* Plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers" (citations omitted) (internal quotation marks omitted)).  Indeed, it has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer* v. *United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969).  Nevertheless, while the court may excuse ambiguities in a *pro se* Plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke*, 60 F.3d at 799.

C.    **The Government's May 29, 2012 Motion To Dismiss The March 29, 2012 Complaint For Lack Of Subject-Matter Jurisdiction.**

1.    **The Congress Has Not Authorized The United States Court Of Federal Claims To Adjudicate The Claims Alleged In The March 29, 2012 Complaint.**

The Government argues that the court does not have jurisdiction to adjudicate the claims alleged in the March 29, 2012 Complaint, because they "sound exclusively in tort." Gov't Mot. at 6.  Likewise, the United States Court of Federal Claims does not have jurisdiction to

adjudicate the alleged violations of Plaintiff's Sixth Amendment rights, because that constitutional provision is not money-mandating. Gov't Mot. at 7; *see also Milas* v. *United States*, 42 Fed. Cl. 704, 710 (1999) ("[T]he Fifth and Sixth Amendments are not money mandating and, consequently, cannot combine with the Tucker Act to provide the court jurisdiction."), *aff'd per curiam*, 217 F.3d 854 (Fed. Cir. 1999).   Moreover, the Sixth Amendment claim in the March 29, 2012 Complaint must be dismissed because the Sixth Amendment applies only to "criminal prosecution[s]" over which the court has no jurisdiction. Gov't Mot. at 7.

Finally, the United States Court of Federal Claims does not have jurisdiction to adjudicate claims arising under the ADA. Gov't Mot. at 7.

### 2. This Matter Should Not Be Transferred To A Federal District Court Because The March 29, 2012 Complaint's Claims Are Barred By The Federal Tort Claims Act's Statute Of Limitations.

Although Plaintiff did not request that his claim be transferred, the Government's May 29, 2012 Motion appropriately raises the issue of whether it would be "in the interest of justice" for the court to transfer this matter to a federal district court. *See* 28 U.S.C. § 1631 (2006). The Government argues that the court should not transfer this matter because Plaintiff's claims would be untimely under the FTCA's statute of limitations for tort actions against the United States. Gov't Mot. at 8.  Section 2401(b) of Chapter 28 of the United States Code requires that an FTCA suit be brought "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  If that requirement is not met, the claim will be "forever barred[.]" *Id.*

The Government contends that an FTCA claim is therefore barred if "the plaintiff fails to file suit in *district court* within six months after final notice of the agency's action on [his] claim." *State Farm Ins. Co.* v. *United States*, 6 F. Supp. 2d 985, 987 (N.D. Ill. 1998) (emphasis added) (citation omitted).  Since the United States Court of Federal Claims is not itself a federal district court, however, Plaintiff cannot use the date when he filed in this court for purposes of the FTCA's statute of limitation.

### D.   The Plaintiff's Failure To Respond.

Plaintiff has not filed a Response to the Government's May 29, 2012 Motion To Dismiss.

### E.   The Court's Resolution.

The court has determined that the March 29, 2012 Complaint and the May 29, 2012 Motion To Dismiss adequately present the issues, affording the court the ability to issue a decision without prejudicing either party.

### 1.   The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Claims.

The United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims. *See* 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the

Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort.*" (emphasis added)); *see also Aetna Cas. & Sur. Co.* v. *United States*, 655 F.2d 1047, 1059 (Ct. Cl. 1981) ("Tort claims, of course, are expressly beyond our Tucker Act jurisdiction."). The primary claims alleged in the March 29, 2012 Complaint, however, concern negligence and medical malpractice. Compl. at 4-5. Since such claims sound in tort, the court does not have jurisdiction to adjudicate them. *See Mendez-Cardenas* v. *United States*, 88 Fed. Cl. 162, 166 (2009) (determining that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims of negligence and medical malpractice because they are torts); *see also McCullough* v. *United States*, 76 Fed. Cl. 1, 4 (2006) (determining that the United States Court of Federal Claims does not have jurisdiction over claims of negligent infliction of emotional distress and "unwelcome surgical procedure").

The court also does not have jurisdiction to adjudicate the March 29, 2012 Complaint's claim that the Government violated Plaintiff's Sixth Amendment rights, because the Sixth Amendment is not money-mandating. *See Dupre* v. *United States*, 229 Ct. Cl. 706, 706 (1981) (per curiam) (holding that the Sixth Amendment does not require the United States to pay money damages, so the United States Court of Federal Claims does not have jurisdiction to adjudicate such a claim). Moreover, the Sixth Amendment applies only to criminal acts. *See* U.S. CONST. amend. VI (providing rights to accused persons in "all *criminal* prosecutions" (emphasis added)).

In addition, the court does not have jurisdiction over ADA claims, because the ADA does not create a substantive right to money damages against the United States. *See Searles* v. *United States*, 88 Fed. Cl. 801, 804 (2009) ("The ADA is not a statute mandating payment by the United States." (citing 42 U.S.C. § 12111(2), (5) (2006))). Moreover, only the United States District Courts have jurisdiction over ADA claims. *See* 28 U.S.C. § 1343(a) (2006) ("The *district courts* shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights[.]"); *see also Johnson* v. *United States*, 97 Fed. Cl. 560, 564 (2011) ("The Court notes that Federal district courts have exclusive jurisdiction over . . . ADA . . . claims.").

### 2.  The March 29, 2012 Complaint Should Be Transferred To A United States District Court, Pursuant To 28 U.S.C. § 1631.

Section 1631 of Chapter 28 of the United States Code provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

Therefore, the court is authorized to transfer the March 29, 2012 Complaint, when the conditions of 28 U.S.C. § 1631 are met. *See Tex. Peanut Farmers* v. *United States*, 409 F.3d 1370, 1375 (Fed. Cir. 2005) ("[T]he trial court could have ordered transfer without being asked to do so by either party[.]"). In order "for a case to be transferred, the court must find that: (1) the transferring court lacks subject matter jurisdiction; (2) at the time the case was filed, the case could have been brought in the transferee court; and (3) such a transfer is in the interest of justice." *Schmidt* v. *United States*, 89 Fed. Cl. 111, 124-25 (2009).

The first requirement of the *Schmidt* test is satisfied in this case, because the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate the claims alleged in the March 29, 2012 Complaint.

The United States District Court for the District of Columbia, however, had jurisdiction over Plaintiff's tort claims when the March 29, 2012 Complaint was filed, since the Complaint was filed within six months of the DVA's September 30, 2011 Decision.[3]   *See* 28 U.S.C. § 1346(b) (2006) (providing that the United States District Courts have "exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by negligent or wrongful acts or omission of any employee of the Government"); *see also* 28 U.S.C. § 2675(a) (2006) (requiring that prior to being filed in a United States District Court, an FTCA claim "shall have first [been] presented . . . to the appropriate Federal agency and [the] claim shall have been finally denied by the agency in writing and sent by certified or registered mail"). Indeed, the VA's September 30, 2011 Decision assured Plaintiff that "a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration" provided that "such a suit . . . be initiated . . . within 6 months after the date of mailing of [the September 30, 2011 Decision.]" PX 1. Accordingly, the court has determined that Plaintiff had six months after receiving the DVA's

---

[3] The case law, however, does not appear to be settled as to whether the six month time period for seeking judicial review of a final agency denial of an FTCA claim begins anew after, or is tolled during, an agency's consideration of an administrative request for reconsideration. *See Berti* v. *V.A. Hospital*, 860 F.2d 338, 340 (9th Cir. 1988) (holding, ambiguously, that the filing of a request for reconsideration "prevents the agency's denial from becoming a final denial for purposes of 28 U.S.C. § 2401(b) and tolls the six-month limitation period until either the V.A. responds or six more months pass"). The weight of authority, however, suggests that after an agency denies a request for reconsideration, the claimant has six additional months to seek review in a federal court. *See, e.g.*, *Harris* v. *United States*, No. 86-7008, 1987 WL 12870, at *1-2 (E.D. Pa. 1987) (unpublished) (determining that a complaint filed exactly six months after the DVA's denial of plaintiff's FTCA request for rehearing was timely); *Townsend* v. *United States*, No. 01-2496-JWL, 2002 WL 731695, at *3 (D. Kan. 2002) (unpublished) (interpreting, in dicta, a denial of a request for reconsideration to be a final denial pursuant to 28 U.S.C. § 2401(b)); *cf. Civil Aeronautics Board* v. *Delta Air Lines, Inc.*, 367 U.S. 316, 326 (1961) (recognizing "the general notion that an administrative order is not final, for the purposes of judicial review, until outstanding petitions for reconsideration have been disposed" (internal quotations omitted)); *but see Seastrom* v. *Dep't of Army*, No. C-08-4108 EMC, 2009 WL 5062329, at *2 (N.D. Cal. 2009) (unpublished) (suggesting, in dicta, that the six-month filing deadline is merely tolled during reconsideration and restarts when the agency issues a denial of the request for reconsideration).

September 30, 2011 Decision to file a complaint in federal court challenging that Decision. Moreover, it is by no means evident that the United States District Court for the District of Columbia does not have jurisdiction to adjudicate Plaintiff's FTCA claims on the grounds asserted in the DVA's September 30, 2011 Decision, *i.e.*, that Plaintiff's September 16, 2008 FTCA claim was filed in an untimely manner with the DVA.[4]

The Government's argument that a United States District Court would not have jurisdiction over the March 29, 2012 Complaint because Plaintiff must have brought his claim in a United States District Court within six months of the September 30, 2011 Decision is without merit. *See* Gov't Mot. at 8. The Government's interpretation runs contrary to the purpose of the transfer statute. *See Texas Peanut*, 409 F.3d at 1374 ("'A compelling reason for transfer is that the [plaintiff's complaint] . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court.'" (quoting *Phillips* v. *Seiter*, 173 F.3d 609, 610 (7th Cir. 1999))); *see also* 28 U.S.C. § 1631 (2006) (requiring that upon transfer "the action . . . shall proceed *as if it had been filed or noticed for the court to which it is transferred* on the date upon which it was actually filed in or noticed for the court from which it is transferred" (emphasis added)). Moreover, the transfer statute authorizes the United States Court of Federal Claims to transfer a complaint to the district courts of the United States to cure "a want of jurisdiction." 28 U.S.C. § 1631 (stating that it applies to any court "as defined in [28 U.S.C. §] 610[,] which defines the United States Court of Federal Claims as a "court" for purposes of Chapter 28 of the United States Code).

The Government's reliance on *State Farm*, 6 F. Supp. 2d 985, likewise is misplaced. That case did not turn on whether the complaint had been filed within six months in a *district court*, but was resolved because of the plaintiffs failure to file their FTCA claim in *any* court within six months. *Id.* at 987. ("[T]he court finds that it does not have subject matter jurisdiction over plaintiffs' claims because plaintiffs failed to file suit within six months after the Postal Service mailed the notice of denial."). The Government's citation to *Marley* v. *United States*, 567 F.3d 1030 (9th Cir. 2009), for the proposition that "the six month statute of limitations in § 2401(b) is jurisdictional [and, therefore, doctrines of equitable estoppel and equitable tolling do not apply" similarly is flawed. *Id.* at 1037. The court does not need to rely

---

[4] The DVA's September 30, 2011 Decision determined that Plaintiff's FTCA claim was untimely under the two year statute of limitations set forth in 28 U.S.C. § 2401(b). *See* PX 1. It reasoned that Plaintiff was "fully informed of [his] medical situation" on September 5, 2006, but failed to file his FTCA claim until September 16, 2008, *i.e.*, slightly more than two years later. PX 1. The March 29, 2012 Complaint, however, appears to allege ongoing medical malpractice and gross negligence up until Plaintiff's October 2006 discharge from the VA Medical Center. PX 1. Accordingly, the district court may determine that Plaintiff's administrative claim before the DVA stated a claim for injuries suffered during the two years preceding Plaintiff's September 16, 2008 administrative FTCA claim. *See Cedars-Sinai Medical Center* v. *Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." (citing *Land* v. *Dollar*, 330 U.S. 731, 735 n.4 (1947))). This court, however, is in no position to conduct such a jurisdictional inquiry since FTCA claims are clearly outside our jurisdiction. It is best left to a court with appropriate jurisdiction to engage in further jurisdictional fact finding if necessary.

on equitable doctrines here, but simply applies the statutory mandate to cure a want of jurisdiction by transfer.

Finally, the third prong of the *Schmidt* transfer test, *i.e.*, that transfer be "in the interest of justice," is satisfied here. Plaintiff's Complaint would be untimely if it were refiled now. *See Texas Peanut*, 409 F.3d at 1374 ("'A compelling reason for transfer is that the [plaintiff's complaint] . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court.'" (quoting *Phillips*, 173 F.3d at 610)). And, the Government has not represented that it will be harmed in any way by the transfer, or that "transfer would unduly burden the judicial system[.]" *See id.*, 409 F.3d at 1375.

## V.   CONCLUSION.

For the foregoing reasons, the March 29, 2012 Complaint is transferred to the United States District Court for the District of Columbia.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
Judge

A TRUE COPY:
TEST:        JUL 2 3 2012

Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By
Deputy Clerk

8

ORIGINAL

013540

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**

MAR 29 2012

U.S. COURT OF
FEDERAL CLAIMS

RICHARD MAURICE GABLE

V.

THE UNITED STATES

No. 021B-CF 16479

12-202 C

DATE: 3/17/2012

_Richard M. Gable_

COMPLAINT

PRESENTED BY:
Richard Maurice Gable
29812 CHERYL COURT
MECHANIESVILLE, MD 20659
240-320-3467

**TABLE OF CONTENTS**

Disclaimer...............................................................................................................2
Summary................................................................................................................2
Facts/Evaluation of the
case.....................................................................................................................3+4
Rule of Law- Legal Statutes and Mandates Violated against Richard Maurice Gable............4-6
Demand for Judgment and
Conclusion............................................................................................................6

**DISCLAIMER**

The matters set forth herein are stated solely for purposes of filing a Federal Claim; and as such, are to be referred to as a measure of the case should these matters proceed to trial upon approval. The original documents will be provided within this settlement claim, and will be brought before the Judges and the Federal District Court once again promptly upon oral or written request; if needed by the Judge and/or if a trial is requested. All figures utilized herein are subject to change without notice; as discovery and investigation are continuing, and as medical attention continues to be required. All figures will accordingly require updating at or prior to trial, and are not to be construed as final figures should these matters proceed to trial.

Potential plaintiff, Richard M. Gable, and his spokesperson, reserve the right to present a copy of this Federal Claim as evidence in a secondary action directly against The United States Federal District Court and VA Washington Hospital DC; to recover compensatory and punitive damages if the Claimant and his spokesperson in their sole discretion, deem that The Federal District Court has violated the provisions of the District of Columbia Fair Claims Practice Act; Or, if the Federal Government has violated the provisions of the District of Columbia common law obligation of good faith and fair dealing in Federal Claims practices.

**SUMMARY**

This Federal claim is based around previous injuries Richard Maurice Gables received during his military service in Vietnam; with extended and serious injuries resulting from violations against Mr. Gables, while in the care of the VA Medical Center in Washington, DC., The following rights were violated against Richard Maurice Gable:  Violation of Title 38 under The American Disabilities Act; Violation of his Sixth Amendment Rights including- 410.4 Extreme and Outrageous Conduct, and 410.5 Severe Emotional Distress, Medical Malpractice and Gross Negligence. While in the care of the VA Medical Center in Washington, DC., Gross Negligence and Medical Malpractice caused the unauthorized amputation of his left leg; while inhumane conditions and neglect continued for ten months while Richard Gables was in the care of the VA Medical Center. Mr. Gable is 100 percent service connected for his duty in Vietnam since 1991, and his right for Patient Protection; appropriate hospital care, and the right to be compensated for Gross Negligence and Medical Malpractice, were all seriously denied and violated against him. Mr. Gable was hospitalized in January 2006 at the VA Medical Center for the replacement of his

left knee, and instead the entire leg was amputated without authorized consent! The operation was for a knee replacement only; and Mr. Gable should therefore have gone home soon after, but he was never released due to a series of violations and abuses this Federal claim is based around.

## Facts:

### Paragraph 1:

This Federal Claim begins with Mr. Gable's heroism as he served with the 1/9 Recon in Vietnam; with the motto his unit lived by, "I can..I will." As a proud Veteran Mr. Gables always did complete his mission, and proved himself a worthy soldier that was continuously sent on multiple missions, due to his ability to remain alive and able to serve. Richard Gable saved many lives with his honorable service and duty for this country; as he continuously was sent on mission after mission, with his ability to defeat the enemy and stay alive, his heroism kept many of his comrades alive. However, Mr. Gable did not receive the same honor when his knee grew worse over the years; he wound up needing to be placed in the care of the VA Medical Center in Washington, DC in 2006. Mr. Gables received knee injuries amongst other infirmities, like Agent Orange contamination; and PTSD from Vietnam. However what placed him in the VA Medical Hospital in 2006; was his knee injuries that were brought on by his repeated mission that caused him harm by jumping out of helicopters and falling to the ground repeated times. Mr. Gable endured the knee pain and injuries over the years, until the knee grew worse and he was told by the advice of Dr. Estime to get his left knee replaced.

### Paragraph 2:

In January 2006 Mr. Gables under the advice of Dr. Estime; was hospitalized at the VA Medical Center for the replacement of his left knee, and instead Richard Gable came out ten months later as an amputee! The first knee replacement operation seemed to go very well and he thought he was going home; but was never released because he came down with a very serious staph infection, which placed him in critical care where he was fighting for his life. After surviving critical care he was transferred to the surgical ward where he would endure 17 more operations and would not be released from the VA hospital until ten months later, with a missing left limb. On August 23rd, 2006 his leg was removed without the proper authorization or knowledge of his trustee who was his son. The entire staff on the ward knew the decision and authority Mr. Gable had given to let his son have full authorization over his medical treatment and decisions while at the VA hospital. During the ten month stay, a Dr. Reubin A. Bueno had to perform 2 additional operations to fix his leg after it had been amputated. The Leg was not only taken without his son's consent or authority; but was cut inappropriately therefore Dr. Bueno had to perform 2 additional surgeries to fix the horrific amputation that was performed on the leg. Dr. Bueno is a witness to the injustices and violations of Mr. Gable's rights, and will be called upon to testify as a witness to this claim. Dr. Bueno witnessed the negligent medical conditions he found Mr. Gable in to include the following: Not only did Dr. Bueno find Mr. Gable was given a surgery he should not have received; and the bone cut inappropriately having to repair the

surgical cut himself with 2 additional surgeries, but found him tied to a bed, drugged, and not on the proper mental health medication he was supposed to be on the entire time he was hospitalized at the VA Medical Center.  As a Disabled Veteran he was placed in a recovery room without wheelchair access; never allowed a shower or bath for ten months and 19 days, and a knee replacement became a nightmare in the form of an unauthorized amputation of the left leg.

## Paragraph 3:

The conditions of Mr. Gable's hospital stay on the surgical ward were inhumane, and he was continuously denied his rights as a disabled Veteran under the following Laws:

The Disabilities Act; the violation of Unauthorized Treatment and Lack of "Informed Consent," violation of his Sixth Amendment rights, and Gross Medical Negligence. On January 2006 Mr. Gables was hospitalized for the replacement of his left knee at the VA Medical Center in Washington, DC., and left the hospital ten months later with a missing limb. On August 23rd 2006, the amputation was performed and the limb taken without the appropriate legal consent and authorization. This extreme and outrageous conduct performed on Mr. Gable, along with Gross Medical Negligence led to 2 additional surgeries.  The inhumane conditions given to Mr. Gable; and the outrageous conduct performed on his leg without consent, combined with the abusive treatment while remaining in the care of the VA Medical Center in Washington, DC., are the reasons for this Federal Claim. The following Laws have been violated against Mr. Gable by the United States Government and the VA Medical Center of Washington, DC.

1.  Violation of his Sixth Amendment Rights
2.  Extreme and Outrageous Conduct of one's Sixth Amendment Rights- 410.4 Extreme and Outrageous Conduct
3.  410.5- Severe Emotional Distress
4.  Medical Malpractice and Gross Negligence
5.  Violation of Title 38 under the American Disabilities Act

## The Allegations of the RULE OF LAW violated on the following Statues against Richard Maurice Gable:

### 410.4 EXTREME AND OUTRAGEOUS CONDUCT

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his Causing Severe and emotional distress:

Extreme and outrageous conduct is behavior, which, under the circumstances, goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable in a civilized community.

**410.5 SEVERE EMOTIONAL DISTRESS**

**Emotional distress is severe when it is of such intensity or duration that no ordinary person should be expected to endure it.**

**A Special use for 410.5**
**A special instruction may be warranted when the evidence shows the defendant knew of the claimant's heightened susceptibility to emotional distress.**

## Medical Malpractice and Gross Negligence

Within the context of medical malpractice, the term "gross negligence" refers to conduct so reckless or mistaken as to render itself virtually obvious to a layman without medical training. Examples include a surgeon amputating the wrong limb or leaving a surgical instrument inside a body cavity of the patient. Within the context of medical malpractice, the term "gross negligence" refers to conduct so reckless or mistaken as to render itself virtually obvious to a layman without medical training. Examples include a surgeon amputating the wrong limb or leaving a surgical instrument inside a body cavity of the patient.
Some states will permit a person to establish a cause of action for medical malpractice grounded in gross negligence without the need for expert testimony. A minority of states still permit an action for "res ipsa loquitur" ("the thing speaks for itself"), meaning that such an accident or injury to the patient could not have occurred unless there was negligence by the doctor's having control over the patient.

## Medical Malpractice and Gross Negligence by the Unauthorized Treatment and Lack of "Informed Consent" of a patient.,

Virtually all states have recognized, either by express statute or common law, the right to receive information about one's medical condition, the treatment choices, risks associated with the treatments, and prognosis. The information must be in plain language terms that can readily be understood and in sufficient amounts such that a patient is able to make an "informed" decision about his or her health care.
If the patient has received this information, any consent to treatment that is given will be presumed to be an "informed consent." A doctor who fails to obtain informed consent for non-emergency treatment may be charged with a civil and/or criminal offense such as a "battery" or an unauthorized touching of the plaintiff's person.
In order to prevail on a charge that a doctor performed a treatment or procedure without "informed consent," the patient must usually show that, had the patient known of the risk or outcome allegedly not disclosed, the patient would not have opted for the treatment or procedure

and thus avoided the risk. In other words, the patient must show a harmful consequence to the unauthorized treatment.

**Definition:**

A failure to behave with the level of care that someone of ordinary prudence would have exercised under the same circumstances. The behavior usually consists of actions, but can also consist of omissions when there is some duty to act (e.g., a duty to help victims of one's previous conduct).

## Concluding Paragraph:

The witnesses of this claim will attest to the medical conditions Mr. Gables was found to endure while in the care of the VA Medical Center in DC., A legal analysis has been recorded; and will be analyzed in the presence of the Federal District Court, upon approval of this Federal Claim. Wherefore Richard Maurice Gable sets forth demand for judgment against the United States for 5,000,000 dollars. Richard Gable is a service connected Veteran, and a United States Citizen seeking monetary demand for judgment for 5,000,000 dollars against the United States Government.



**DEPARTMENT OF VETERANS AFFAIRS**
Office of the General Counsel
Washington DC 20420

SEP 1 0 2011

CERTIFIED MAIL

In Reply Refer To
021B.CE.16479

Mr. Richard M. Gable
29812 Cheryl Court
Mechanicsville, Maryland 20659

Subject: Administrative Tort Claim - Request for Reconsideration

Dear Mr. Gable

Our office has now completed our reconsideration of the above-referenced matter under the Federal Tort Claims Act (FTCA), and it is again denied.

The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable under state tort law. After a thorough and complete review of your claims, including your allegations of ADA violations, Constitutional rights violations, medical malpractice, and general violations of your Veteran's rights, this office discovered no evidence, either new or previously provided, that substantiates your claims. Your allegations of violations of Constitutional and ADA rights are not cognizable under the FTCA. As to those allegations that are within the purview of the FTCA, our review revealed no evidence of any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that caused harm to you during your in-patient treatment at the Washington, D.C., VA Medical Center between January 2006 and October 2006. Your claim is, therefore, denied.

Further, a claim under the FTCA is barred as untimely unless it is presented within two years after accrual of the action as required by law and set forth in section 2401(b) title 28, United States Code. On September 5, 2006, you were fully informed of your medical situation, but you did not file this FTCA claim until September 16, 2008. Accordingly, as you failed to file an FTCA claim within two years of the latest date of accrual of your claim, September 5, 2006, this claim is also barred by section 2401(b), title 28, United States Code.

Further action on the matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code, which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated, however, within 6 months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If such a suit is filed, the proper party defendant would be the United States, not VA.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

E. Douglas Bradshaw, Jr
Assistant General Counsel

cc:
VA Regional Counsel, Baltimore, Maryland

A TRUE COPY
TEST:

        Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By
Deputy Clerk

# In the United States Court of Federal Claims

Case No.: 1:12–cv–00202–SGB

Filed: 3/29/2012

RICHARD MAURICE GABLE

v.                                          NOTICE OF ASSIGNMENT TO:
                                            Judge Susan G. Braden

UNITED STATES OF AMERICA

Pursuant to Rule 40.1, this case has been assigned to the above Judge for the conduct of proceedings pursuant to the rules of this court. Careful consideration and observance by counsel of the rules of the court and the orders of the judge applicable to the various steps required for the prosecution of the case will enable the judge and the clerk of court to assist counsel in the expeditious disposition of the case with a minimum of time and expense. Counsels' attention is called to Appendix A of the Rules of the United States Court of Federal Claims, which govern proceedings before trial, and has application in every case unless an order is entered providing otherwise. As to the duplication, form and size requirements and number of copies of papers to be filed, see Rule 5.5. As to service and filing, see Rule 5.

Counsels' attention is called to Appendix H that implements methods of Alternative Dispute Resolution available at the court: Early Neutral Evaluation, Settlement Judges, Mini–Trials, and Third–Party Neutrals.

The United States is requested to promptly file written notification of the name, address and telephone number of assigned counsel in accordance with Rule 83.1(c)(3) and (5).

Pursuant to Rule 5.5(g): "In pleadings and papers other than the complaint, the name of the judge assigned to the case shall be included under the docket number."

ECF
DOCUMENT

A TRUE COPY  SEP 2
TEST:

Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By
Deputy Clerk

Hazel C Keahey
Clerk of Court

# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RICHARD MAURICE GABLE, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | |
| | ) | APR 1 6 2012 |
| v. | ) No. 12-202C | |
| | ) (Judge Braden) | U.S. COURT OF |
| THE UNITED STATES, | ) | FEDERAL CLAIMS |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF APPEARANCE

To the Clerk:

Please enter the appearance of Seth W. Greene, as attorney of record for the United

States. Service of all papers by opposing parties should be addressed as follows:

Seth W. Greene
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Classification Unit, 8th Floor
PO Box 480
Ben Franklin Station
Washington, D.C. 20044



_____
SETH W. GREENE
Trial Attorney
Commercial Litigation Branch
Civil Division
Telephone: (202) 353-4175
Facsimile: (202) 514-8640
E-mail: Seth.Greene@usdoj.gov

Dated: April 16, 2012

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 16 day of April, 2012, I caused to

be placed in the United States mail (first-class, postage prepaid), copies of a "NOTICE OF

APPEARANCE" addressed as follows:

> Richard Maurice Gable
> 29812 Cheryl Court
> Mechaniesville, MD 20659

*Dawn A. Kettaway*

A TRUE COPY:
TEST:

Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By

Deputy Clerk

**ORIGINAL**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**

MAY 2 9 2012

U.S. COURT OF
FEDERAL CLAIMS

RICHARD MAURICE GABLE, )
                          )
          Plaintiff, )
                          )
      v. )    No. 12-202C
                          )    (Judge Braden)
THE UNITED STATES, )
                          )
          Defendant. )

### DEFENDANT'S MOTION TO DISMISS
### FOR LACK OF SUBJECT-MATTER JURISDICTION

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"),

defendant, the United States, respectfully requests that the Court dismiss for lack of subject-

matter jurisdiction the *pro se* complaint of plaintiff, Richard Maurice Gable, filed in the above-

captioned matter on March 29, 2012.

### STATEMENT OF THE ISSUE

Whether the Court should dismiss this action for lack of subject-matter jurisdiction in

accordance with RCFC 12(b)(1), because the claims set forth in plaintiff's complaint are not

within this Court's limited jurisdiction.

### INTRODUCTION AND STATEMENT OF THE CASE

On March 29, 2012, Mr. Gable filed on his own behalf a complaint in this Court.

("Compl. __"). Mr. Gable's *pro se* complaint seeks redress for alleged tortious actions by

doctors and hospital staff at the United States Department of Veterans Affairs (DVA), VA

Medical Center in Washington, D.C., related to the amputation of his left leg in 2006. Compl. at

2-6.

In January 2006, Mr. Gable, a combat veteran of the Vietnam War, was admitted to the

DVA medical center for knee replacement surgery on his left knee. *Id.* at 2-3. Mr. Gable asserts

that, following the knee operation, he "came down with a very serious staph infection" in his left

leg, placing him in critical care. *Id.* at 3. Mr. Gable asserts that he was subsequently transferred

to a surgical ward for 17 additional surgeries over the next 10 months. *Id.* Mr. Gable alleges that

his left leg was eventually removed by a DVA doctor without his consent on August 23, 2006.

*Id.* He further alleges that negligence by the doctor during the amputation operation caused Mr.

Gable to require two additional surgeries to repair "the horrific amputation that was performed

on the leg." *Id.* Additionally, Mr. Gable claims that the DVA medical center was negligent in

providing mental health medication and medical care to Mr. Gable during his treatment at the

hospital. *Id.* at 3-4. He further claims that, after his amputation operation, he was "placed in a

recovery room without wheelchair access" and "never allowed a shower or bath for ten months

and 19 days." *Id.* at 4.

On September 16, 2008, Mr. Gable filed an untimely administrative claim with the DVA

under the Federal Tort Claims Act (FTCA). *See id.* at 7. The DVA sent Mr. Gable a notice of

final denial of his tort claim on September 30, 2011. *Id.* In denying Mr. Gable's request for

reconsideration of his tort claim, the DVA stated that its review of Mr. Gable's claims "revealed

no evidence of any negligent or wrongful act or omission on the part of a [DVA] employee acting

within the scope of his or her employment that caused harm to you during your in-patient

treatment at the Washington, D.C., VA Medical Center between January 2006 and October

2006." *Id.* The DVA further stated that Mr. Gable's FTCA claim was barred as untimely

because he failed to file his claim within two years after his claim accrued on September 5, 2006,

-2-

as required by 28 U.S.C. § 2401(b). *Id.* The letter stated that Mr. Gable could file suit against

the United States in "a Federal district court" under the FTCA. *Id.* The notice informed Mr.

Gable that any action "must be initiated, however, within 6 months after the date of mailing of

this notice of final denial as shown by the date of this letter" – that is, within six months of

September 30, 2011. *Id.* Mr. Gable filed a complaint in this Court on March 29, 2012, six

months after he received the notice of final denial. *See id.* at 1, 7.

In his complaint, Mr. Gable asserts several tort claims against the Government. Mr.

Gable seeks $5 million in damages resulting from alleged "Medical Malpractice," "Gross

Negligence," negligent infliction of "Emotional Distress," and "Unauthorized Treatment" by

DVA doctors and hospital staff related to the amputation of his left leg in 2006. *See id.* at 2-6.

Mr. Gable also alleges the violation of (1) "his Sixth Amendment Rights" and (2) his civil rights

under the Americans With Disabilities Act (ADA). *Id.* at 2, 4.[1]

ARGUMENT

I.    Standard For Motion To Dismiss For Lack Of Subject-Matter Jurisdiction

A challenge to the Court's "general power to adjudicate in specific areas of substantive

law . . . is properly raised by a Fed. R. Civ. P. 12(b)(1) motion." *Palmer v. United States*, 168

F.3d 1310, 1313 (Fed. Cir. 1999). In determining whether it possesses subject-matter jurisdiction

---

[1] Mr. Gable appears to claim that DVA personnel also violated certain "statutes" in "violation of his Sixth Amendment Rights." *See* Compl. at 2, 4-5. In particular, Mr. Gable claims that DVA personnel violated "410.4 Extreme and Outrageous Conduct" and "410.5 Severe Emotional Distress." *See id.* Based upon our research, it appears that these "statutes" are, in fact, "standard civil jury instructions" in the State of Florida. *See In re Std. Jury Instructions in Civil Cases - Report No. 09-01 (Reorganization of the Civil Jury Instructions)*, 35 So. 3d 666, 758 (Fla. 2010) (identifying civil jury instructions "410.4 Extreme and Outrageous Conduct" and "410.5 Severe Emotional Distress").

to entertain a plaintiff's complaint, the Court presumes all undisputed factual allegations to be true and construes all reasonable inferences in favor of the plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a *pro se* plaintiff is not excused from the burden of meeting this Court's jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987); *see also Henke*, 60 F.3d at 799 ("The fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). Thus, if a *pro se* plaintiff, like any plaintiff, does not establish that the Court possesses subject-matter jurisdiction, then the Court dismisses the claim under RCFC 12(h)(3). *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

II.     This Court's Jurisdiction Is Limited

This Court's jurisdiction is established and limited by the Tucker Act. *See* 28 U.S.C. § 1491. The Tucker Act's waiver of sovereign immunity must be explicit and is strictly construed. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Act grants the Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*." 28 U.S.C. § 1491(a)(1) (emphasis added).

-4-

The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive
right enforceable against the United States for money damages. . . . [T]he Act merely confers
jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S.
392, 398 (1976). Thus, to come within this Court's jurisdiction, "a plaintiff must identify a
separate source of substantive law that creates the right to money damages." *Fisher v. United
States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The separate source of substantive law
must be a "money-mandating constitutional provision, statute or regulation that has been
violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v.
United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994). A constitutional provision, statute, or
regulation is money-mandating if the particular provision relied upon expressly or impliedly
grants the claimant a right to be paid a certain sum. *See Eastport Steamship Corp. v. United
States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967). Accordingly, this Court "may only render judgment
for money when the violation of a constitutional provision, statute, or regulation independently
mandates payment of money damages by the United States." *Ogden v. United States*, 61 Fed. Cl.
44, 47 (2004) (citing *Khan v. United States*, 201 F.3d 1375, 1377-78 (Fed. Cir. 2000)).

Furthermore, as referenced above, this Court lacks jurisdiction to entertain tort claims.
*See* 28 U.S.C. § 1491(a)(1); *see also Brown v. United States*, 105 F.3d 621, 623-24 (Fed. Cir.
1997); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993). Instead, the United States
district courts have exclusive jurisdiction over tort claims under the FTCA. *See* 28 U.S.C.
1346(b)(1); *see also Wood v. United States*, 961 F.2d 195, 197 (Fed. Cir. 1992); *McCauley v.
United States*, 38 Fed. Cl. 250, 264 (1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998).

III.    Mr. Gable's Complaint Falls Outside This Court's Limited Jurisdiction

Mr. Gable's complaint falls outside this Court's limited jurisdiction because his claims

sound exclusively in tort. Mr. Gable's claims for medical malpractice, gross negligence,

negligent infliction of emotional distress, and unauthorized medical treatment are tort claims.

*See Hampel v. United States*, 97 Fed. Cl. 235, 238 (2011) (recognizing that medical malpractice

and negligence claims sound in tort) (citations omitted); *Treece v. United States*, 96 Fed. Cl. 226,

231-32 (2010) (recognizing that a claim for "emotional distress" sounds in tort) (citation

omitted); *McCullough v. United States*, 76 Fed. Cl. 1, 4 (2006) (stating that "an unwelcome

surgical procedure which plaintiff describes may state a claim for battery, but such a claim also

sounds in tort"). Thus, Mr. Gable's claim for monetary damages, which arises out of alleged

negligent and wrongful conduct by DVA doctors and hospital staff in the course of discharging

their official duties, are claims clearly sounding in tort. *See McCauley*, 38 Fed. Cl. at 265

(citations omitted). This Court "does not have jurisdiction over claims that defendant engaged in

negligent, fraudulent, or other wrongful conduct when discharging its official duties." *Cottrell v.*

*United States*, 42 Fed. Cl. 144, 149 (1998) (citing *McCauley*, 38 Fed. Cl. at 265). Because Mr.

Gable's claims sound exclusively in tort, the Court lacks jurisdiction to entertain his complaint.

28 U.S.C. § 1491(a)(1); *Brown*, 105 F.3d at 623-24; *Shearin*, 992 F.2d at 1197.[2]

In addition, Mr. Gable alleges a violation of his constitutional rights under the Sixth

Amendment. Compl. at 2, 4. "In order for this Court to have jurisdiction over constitutional . . .

_____

[2] As discussed above, the United States district courts have exclusive jurisdiction over
claims under the FTCA. *See, e.g., Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002);
*Wood*, 961 F.2d at 197. The Court of Federal Claims is not a United States district court. *E.g.,*
*Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002). Therefore, this Court lacks
subject-matter jurisdiction over Mr. Gable's damages claims.

claims, the claims must be money-mandating." *Tasby v. United States*, 91 Fed. Cl. 344, 346 (2010) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). This Court has held that the Sixth Amendment is not money-mandating. *See Milas v. United States*, 42 Fed. Cl. 704, 710 (1999), *aff'd per curiam*, 217 F.3d 854 (Fed. Cir. 1999). Therefore, the Court lacks jurisdiction to entertain Mr. Gable's claim based upon an alleged violation of the Sixth Amendment.

Even assuming that the Court had jurisdiction to consider Mr. Gable's claim based upon the Sixth Amendment, the claim would be without merit. The Sixth Amendment states: "*In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI (emphasis added). Thus, Mr. Gable "misapprehends the nature of the sixth amendment, which pertains only to criminal prosecutions." *See Milas*, 42 Fed. Cl. at 716 (quoting *Yount v. United States*, 23 Cl. Ct. 372, 379-80 n.8 (1991)). This case involves civil proceedings, not a criminal prosecution. *See id.* Consequently, Mr. Gable's reliance on the Sixth Amendment is unfounded in any event.

Finally, Mr. Gable alleges that DVA hospital staff violated his civil rights under the ADA. Compl. at 2, 4. The United States district courts and state courts, not the Court of Federal Claims, have exclusive jurisdiction to entertain claims under the ADA. *See McCauley*, 38 Fed. Cl. at 266 (citation omitted). Therefore, the Court lacks jurisdiction to entertain Mr. Gable's claim based upon an alleged violation of the ADA.

As demonstrated above, because this Court does not possess jurisdiction to entertain any of Mr. Gable's claims, his *pro se* complaint should be dismissed.

IV.   Mr. Gable's Complaint Should Not Be Transferred To A United States District Court
      Because His Complaint Is Barred By The Statute Of Limitations

       Although this Court lacks jurisdiction to entertain Mr. Gable's complaint, the Court may

consider whether "it is in the interest of justice" to transfer his complaint to a United States

district court under 28 U.S.C. § 1631. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1379,

1374-75 (Fed. Cir. 2005) (stating that the Court of Federal Claims should have considered

whether transfer was appropriate once the Court determined that it lacked jurisdiction); *Reid v.*

*United States*, 95 Fed. Cl. 243, 250 (2010); *McCullough*, 76 Fed. Cl. at 5. The Court should not

transfer Mr. Gable's complaint to a United States district court because his complaint would be

barred by the statute of limitations for actions against the United States. Mr. Gable failed to file

his complaint in a United States district court within the six-month period required by 28 U.S.C.

§ 2401(b). Section 2401(b) provides, in pertinent part, that "[a] tort claim against the United

States shall be forever barred . . . unless action is begun within six months after the date of

mailing, by certified or registered mail, of notice of final denial of the claim by the agency to

which it was presented." 28 U.S.C. § 2401(b). Thus, "section 2401(b) bars plaintiff's claim if

the plaintiff fails to file suit in *district court* within six months after final notice of the agency's

action of their claim." *State Farm Ins. Co. v. United States*, 6 F. Supp. 2d 985, 987 (N.D. Ill.

1998) (citation omitted) (emphasis added). "Failure to file suit within six months as required by

section 2401(b) divests the court of subject matter jurisdiction over the plaintiff's claim." *Id.*

(citations omitted); *see also Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009)

(holding that "the six-month statute of limitations in § 2401(b) is jurisdictional" and that "the

doctrines of equitable estoppel and equitable tolling do not apply"), *cert. denied*, 2009 U.S.

-8-

LEXIS 8751 (U.S. Dec. 7, 2009). Accordingly, a district court would not have subject-matter

jurisdiction over Mr. Gable's FTCA claim because he failed to file suit in such a court within six

months after the DVA mailed the final notice of denial, on September 30, 2011. *See* Compl. at 7.

CONCLUSION

For these reasons, we respectfully request this Court to dismiss Mr. Gable's complaint for

lack of subject-matter jurisdiction.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

SETH W. GREENE
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
Attention: Classification Unit
8th Floor
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-4175
Facsimile: (202) 307-0972
E-mail: Seth.Greene@usdoj.gov

May 29, 2012                    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 29th day of May, 2012, I caused to be placed in the United States mail (first-class, postage prepaid) copies of "DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION" addressed as follows:

Richard Maurice Gable
29812 Cheryl Court
Mechanicsville, MD 20659

A TRUE COPY:
TEST: SEP 2 1 2012

Hazel C. Keahey
Clerk, U.S. Court of Federal Claims

By
Deputy Clerk